CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 0 1 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN DONOHUE, ) | |
| ) | |
| Plaintiff, ) | Case No. 7:11CV00090 |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| ) | |
| HARRIS L. DIGGS, ET AL., ) | By: Glen E. Conrad |
| ) | Chief United States District Judge |
| Defendants. ) | |

Plaintiff John Donohue, a Virginia inmate proceeding pro se, has filed this civil rights action, pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, Donohue alleges that he has been denied due process on prison disciplinary charges he has received in the last three years. Upon review of the record, the court finds that the complaint must be dismissed.

## Background

Donohue alleges the following sequence of facts on which his claims are based. On December 29, 2009 at 2:00 p.m. at Nottoway Correctional Center (Log #25854), Donohue received a disciplinary charge for making plans or threats to escape. Donohue asserts that the officer decided he was guilty before the hearing began, that he was not allowed to present certain evidence he requested, and that the appeal response included inconsistent findings. For this conviction, the hearing officer imposed a penalty of 30 days in isolation with credit for prehearing detention.

On June 28, 2007, at Dillwyn Correctional Center, Donohue received a disciplinary charge for refusing to submit to a drug test. He did not get a timely copy of the charge, was not provided with a witness he had requested, and was convicted. He has since been diagnosed with an enlarged prostate and apparently feels that because this condition can affect urination, it would have been a complete defense to the June 28, 2007 charge.

On September 29, 2007 at Dillwyn, Donohue received a "false" charge for using vulgar or insolent language toward an employee. Although he had an inmate witness who stated that Donohue had not used vulgar or insolent language as charged, Donohue was convicted and sentenced to 20 days in isolation, with credit for prehearing detention. He was also referred for reclassification.

On September 6, 2009 at Dillwyn, Donohue received a charge for disobeying a direct order to move away from the fence line. He claims that the charging document did not state facts supporting the charge, that no official investigation ensued, and that he was denied his right to appeal. His penalty for this conviction was a $5.00 fine.

Donohue asserts that because of these "false" and/or procedurally defective disciplinary charges, he was transferred to Red Onion State Prison, where he is six hours away from his family. At Red Onion, he must be escorted everywhere in handcuffs and shackles, stays in his cell 23 hours per day, and can get fresh air only in kennel-like cages. He alleges that his new situation constitutes cruel and unusual punishment and continues to cause him mental anguish and emotional distress. He sues the officers involved in the disciplinary charges and hearings, alleging that the charges represent a pattern of "illegally taking good time from inmates" like himself. As relief in this civil action, Donohue seeks injunctive relief ordering that all of his disciplinary charges be dropped, that all of his "good time [be] returned," that he be transferred to a lower-security prison near to his family, and that he be awarded monetary damages.

### Discussion

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). The court is required to dismiss any action or claim filed by a prisoner proceeding in forma pauperis if it determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). In order to

state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). After a review of the allegations, the court concludes that they fail to allege facts stating any plausible claim actionable under § 1983. After a review of Donohue's submissions, the court concludes that he fails to allege facts stating any plausible claim actionable under § 1983.

### A. Due Process

When a defendant is lawfully convicted and confined to prison, he loses a significant interest in his liberty for the period of the sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). For example, inmates have no constitutional right to be housed in any particular prison or in a prison with less restrictive conditions. Meachum v. Fano, 427 U.S. 215, 224 (1976).

> The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.

Id. at 224-25. Moreover, an inmate's place of confinement is necessarily subject to the broad discretion of those parties managing the prison. Gaston, 946 F.2d at 343.

Nevertheless, confinement does not strip inmates of all liberty interests, and state prison regulations may create liberty interests. Id. Such liberty "interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The Court in Sandin specifically found that because the disciplinary penalty of segregated confinement imposed in that case did not exceed similar, but totally discretionary confinement in either duration or degree of restriction, this penalty did not implicate any federally protected liberty interest. Id. at 486-87.

The Court in Sandin also found that simply having a disciplinary conviction in one's prison file does not implicate due process rights when that fact did not inevitably affect the duration of one's confinement. Id. at 487. Courts have also found that Virginia's classification scheme governing prisoners' custody, security, and good conduct earning levels does not create a liberty interest in avoiding changes in these classifications, since an inmate's status in each of these areas is subject to change, based on his own behavior and the discretion of prison officials. Oliver v. Powell, 250 F. Supp. 2d 593, 605 (E.D. Va. 2002); Garrett v. Angelone, 940 F. Supp. 2d 933, 943 (W.D. Va. 1996).

If the status change that an inmate challenges does not impose atypical hardship on the inmate, then he has no federally protected liberty interest and he is not entitled to federal due process protections before prison officials may implement the change. Moreover, a state's failure to abide by its own procedural regulations is not a federal due process issue, Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir.1990), and is, therefore, not actionable under § 1983.

Donohue's submissions indicate that none of the challenged disciplinary proceedings, individually or collectively, resulted in a penalty that imposed atypical hardship on him. In three of the four disciplinary hearings, the imposed penalty was for him to serve time in segregated confinement, during which he was not able to have visits with family members. However, he does not allege facts demonstrating that conditions in segregation are so atypical as to create a liberty interest under Sandin. He also fails to allege that a $5.00 fine imposed an atypical hardship on him, so as to give rise to a federally protected liberty interest.[1] Therefore, he alleges no facts indicating that he was entitled to federal due process protections before being penalized with segregation.

---

[1] A $5.00 fine might give rise to a claim that the inmate was deprived of his property without due process. However, Donohue alleges no such claim. In any event, for reasons explained below, any due process claim regarding the $5.00 is barred by the applicable statute of limitations.

Even assuming that the four disciplinary convictions, as a group, caused Donohue to receive a higher security classification which, in turn, resulted in his transfer to a more restrictive prison where he could not earn as much good conduct time,[2] this result also states no federal due process claim. Because Virginia's classification regulations do not create a federally protected liberty interest in maintaining the same security classification or the same good time earning rate throughout one's prison term, Donohue had no right to federal due process protections before officials could make a discretionary change in these classifications and transfer him to a prison with a higher security level prison.[3]

Finally, Donohue's transfer to Red Onion, with its highly restrictive conditions, did not give rise to a federally protected liberty interest. The United States Court of Appeals for the Fourth Circuit has held that confining segregation inmates for more than six months in conditions much worse than those plaintiff alleges was insufficient to trigger any federal due process right to avoid such conditions. Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997). The Beverati segregation inmates complained of no outside recreation, no clean clothes, less food, and cells infested with vermin and smeared with urine and feces. Id.

Donohue merely complains about limited recreation, being escorted in restraints, and difficulty visiting with family because of distance.[4] While these changes in his circumstances are no doubt frustrating and even harsh, they are not so atypical as to create a federally protected

---

[2] Nothing in Donohue's submissions indicates that as a result of the challenged disciplinary proceedings or the transfer, he lost any good conduct time he had already earned. His complaint mentions only the change in his ability to earn good conduct time.

[3] At one point, Donohue also states that he suffered racial discrimination at Dillwyn. Because he fails to allege a factual basis for this claim, however, the court will dismiss it without prejudice as frivolous, pursuant to § 1915A(b)(1).

[4] To the extent that Donohue raises a separate claim that denial of visitation with his family violated his constitutional rights, that claim fails. Neither prisoners nor would-be visitors have any constitutional right to prison visitation. White v. Keller, 438 F. Supp. 110, 115 (D. Md. 1977), aff'd, 588 F.2d 913 (4th Cir. 1978). See also Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (finding no constitutional infringement where prison policies prevented some inmates from visiting with some relatives).

liberty interest in avoiding transfer to Red Onion.[5] The court cannot find that the segregation conditions of which plaintiff complains were a dramatic departure from the expected limitations on liberty from being incarcerated and so finds no substantive due process claim here. Nor can the court find that these changes in privileges were atypical enough to impose "a significant hardship in relation to the ordinary incidents of prison life." Id. Thus, the court concludes that Donohue's allegations about limited privileges in segregation do not raise any claim under Sandin that he has been deprived of a federally protected liberty interest without due process.

To the extent that prison officials failed to comply with prison procedural regulations during disciplinary proceedings, such violations of state law do not give rise to federal due process claims. Riccio, 907 F.2d at 1469. Similarly, they are not independently actionable under § 1983. Id. Moreover, because the court herein determines that all of Donohue's federal claims must be dismissed, the court declines to exercise supplemental jurisdiction over any state law claims that may arise from the complaint's allegations. See 28 U.S.C. § 1367(c). The court will dismiss the entire complaint without prejudice accordingly.

### B. Statute of Limitations

Finally, as an alternative ground for dismissal, Donohue's due process claims concerning disciplinary convictions he received in 2007 are barred under the applicable statute of limitations. No federal statute of limitations applies in § 1983 actions. Wilson v. Garcia, 471 U.S. 261, 266 (1985). Accordingly, §1983 actions are governed by the state statute of limitations applicable for general personal injury cases in the state where the alleged violations occur. Owens v. Okure, 488 U.S. 235, 239-40 (1989). Virginia has a two-year statute of limitations for general, personal injury claims. Va. Code Ann. § 8.01-243(a). Thus, a plaintiff bringing a civil rights action under § 1983 in Virginia must do so within two years from the time his action accrues—which occurs

---

[5] Donohue also asserts that the conditions at Red Onion constitute cruel and unusual punishment, which suggests that he intends to bring a claim under the Eighth Amendment. However, his allegations do not give rise to any such claim, because he fails to present facts indicating that he suffered any significant injury from the challenged living conditions. See Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993) (requiring showing of serious injury to state Eighth Amendment claim).

"when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

Under these principles, it is clear from the face of Donohue's pleadings that his due process claims concerning disciplinary hearings conducted in 2007 are timebarred. He knew during the time of the challenged proceedings of any procedural protection not provided. Thus, his current claims concerning these disciplinary proceedings, first presented in the complaint filed in January 2011, were not filed within two years after the claims accrued and are, therefore, time barred under Virginia Code Ann. § 8.01-243(a).

## Conclusion

For the stated reasons, the court concludes that Dohohue's complaint fails to give rise to any constitutionally significant claim actionable under § 1983. Therefore, his § 1983 claims must be dismissed as legally frivolous, pursuant to § 1915A(b)(1), and any state law claims are also dismissed without prejudice, pursuant to § 1367(c). An appropriate order will issue this day.

ENTER: This 1st day of March, 2011.

_____
Chief United States District Judge